[Cite as *State v. White*, 2023-Ohio-1103.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2022CA00063 |
| PATRICIA JO WHITE | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common
                             Pleas, Case No. 2020CR01071


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      March 30, 2023


APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

KYLE L. STONE                          D. COLEMAN BOND
PROSECUTING ATTORNEY                   116 Cleveland Avenue, NW
LISA A. NEMES                          Suite 600
ASSISTANT PROSECUTING ATTORNEY  Canton, Ohio  44702
110 Central Plaza South, Suite 510
Canton, Ohio  44702-1413

*Wise, J.*

**{¶1}** Defendant-Appellant Patricia Jo White ("Appellant") appeals her conviction and sentence after a jury trial in the Stark County Court of Common Pleas. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** On July 16, 2020, Appellant was indicted by Stark County Grand Jury for two counts of Telecommunications Harassment in violation of R.C. §2917.21 and one count of Violating a Protection Order in violation of R.C. §2919.27.

**{¶3}** On July 31, 2020, Appellant entered a plea of not guilty by reason of mental insanity, a request for sanity evaluation, and a Motion for Competency.

**{¶4}** On October 5, 2020, the trial court held a competency hearing. After admitting the competency evaluation report into evidence, Dr. Lynn Luna Jones testified Appellant was able to understand the nature and objective of the legal proceedings against her, but she was unable to adequately assist in her own defense. Appellant had trouble identifying details which needed to be discussed with her attorney, and suffered from delusional thinking. She believed her former employer, Aultman Hospital, was involved in a conspiracy that included abusing patients with electroconvulsive therapy, not treating scabies, participating in a pedophilia ring, and that is why she is no longer employed there. Appellant believed Aultman Hospital was connected to Jeffrey Epstein's island because of the logo and color scheme. Appellant accused her previous attorney of conspiring against her, along with police officers and deputies. Appellant believed proceeding to trial would expose Aultman Hospital's activities.

**{¶5}** Dr. Jones also testified Appellant may have a difficult time maintaining decorum in the courtroom. During her evaluation, Appellant was prone to outbursts and could not restrain herself from constantly claiming people were lying about her.

**{¶6}** On cross-examination, Dr. Jones testified Appellant received psychiatric treatment which ended in 2017. Prior, Appellant was employed as a nurse at Aultman Hospital's psychiatric unit. She emailed to the Hospital's administration regarding mistreatment of patients and human trafficking.

**{¶7}** After Dr. Jones's testimony, Appellant submitted a letter to the court stating that she is not delusional because after her email to hospital administration, they closed the psychiatric unit, and that she can assist in her own defense because she had in a previous criminal proceeding. Nothing in the record indicated the reasoning or timing of the psychiatric unit closing.

**{¶8}** The trial court found Appellant was unable to assist in her own defense, but her delusional thoughts could be remitted through treatment. The trial court ordered Appellant to undergo treatment.

**{¶9}** On November 2, 2020, Appellant sent a letter to the trial court raising concerns about her counsel; documentation of her email complaints about her employer occurred forty-five minutes before the closure of the psychiatric unit.

**{¶10}** On December 21, 2020, after a hearing on the administration of medical treatment, the trial court filed a judgment entry granting the authorization for involuntary administration of medication.

**{¶11}** On April 2, 2021, the trial court found Appellant competent to stand trial based upon Heartland Behavioral Healthcare's report.

{¶12}  On April 14, 2021, the trial court issued an Order directing the evaluation of Appellant's mental condition at the time of the offense. That same day, Appellant filed a Motion to Dismiss Count III of the indictment.

{¶13}  On May 17, 2021, the trial court granted Appellant's Motion to Dismiss Count III.

{¶14}  On July 9, 2021, Appellant filed a Motion to Withdraw her Plea of Not Guilty by Reason of Insanity.

{¶15}  On September 7, 2021, Appellant filed two Motions in Limine. The first requested the trial court to limit the evidence Appellee may introduce relating to Count II to communications taking place between December 1, 2019, to April 30, 2020. Appellant argued anything before related to a previous criminal charge would be more prejudicial than probative. The second requested witnesses be instructed not to mention the Civil-Stalking Protection Order which was the subject of Count III, which was dismissed. Appellant also filed a Motion to Dismiss Count I of the indictment.

{¶16}  On September 10, 2021, Appellant's trial counsel filed a Motion to Withdraw as Counsel claiming the attorney-client relationship had fractured beyond repair. Appellant had accused trial counsel of threatening her life and filed a police report to that affect and that Appellant's demeanor and communications have deteriorated the past month.

{¶17}  On September 17, 2021, the trial court ordered a second evaluation of Appellant's competency to stand trial.

{¶18}  On September 21, 2021, the trial court granted Appellant's counsel's Motion to Withdraw as Counsel and appointed new trial counsel.

**{¶19}** On December 8, 2021, the trial court indicated it received Appellant's Second competency report. However, prior to addressing Appellant's competency, Judge Hartnett disclosed that Appellant had attempted to contact her on social media and made several posts on social media tagging the judge's account. Judge Hartnett found Appellant's conduct created a potential conflict, so she requested the Supreme Court of Ohio appoint a visiting judge.

**{¶20}** On December 13, 2021, Judge Haas was appointed visiting judge.

**{¶21}** On January 18, 2021, Judge Haas found Appellant competent to stand trial based on Psycho-Diagnostic Clinic's report prepared on December 7, 2021.  This report was stipulated to by both Appellant and Appellee.

**{¶22}** On February 7, 2021, the matter proceeded to a jury trial. At trial Appellee presented evidence that Appellant sent messages to the victim and her husband threatening the victim, with pictures of the victim hanging, calling the victim abusive names and alleging victim was involved in conspiracy theories regarding Aultman Hospital and the Illuminati.

**{¶23}** After Appellee rested and out of the presence of the jury, Appellant addressed the trial court. Appellant alleged that her trial counsel failed to provide her with proof of guilty, copies of text messages she sent to Nichole Weber. Appellant indicated her decision to go to trial was based upon her belief no text messages would be entered into evidence. Appellant rested without presenting any evidence.

**{¶24}** Appellant moved for acquittal pursuant to Crim.R. 29, which was overruled by the court.

**{¶25}** The jury found Appellant guilty on Count I of the indictment and not guilty on Count II of the indictment.

**{¶26}** On February 15, 2022, Appellant's trial counsel filed a Motion to Withdraw as Appellant was accusing her trial counsel of tampering with evidence. The Motion was granted.

**{¶27}** On February 16, 2022, the trial court appointed new counsel for sentencing and appeal.

**{¶28}** On March 7, 2022, Appellant's sentencing and appellate counsel filed a motion to withdraw due to a conflict of interest. New counsel was appointed the same day.

**{¶29}** On March 24, 2022, the trial court sentenced Appellant to two years of community control, giving Appellant 307 days credit for time previously served.

### ASSIGNMENTS OF ERROR

**{¶30}** Appellant timely filed a notice of appeal. She herein raises the following three Assignments of Error:

**{¶31}** "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST APPELLANT, AND THE CONVICTION MUST BE REVERSED.

**{¶32}** "II. THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED.

**{¶33}** "III. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE 6TH AND 14TH AMENDMENTS

TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION."

**I., II.**

**{¶34}** In Appellant's First and Second Assignments of Error, Appellant argues her conviction is against the manifest weight of the evidence and is not supported by sufficient evidence. We disagree.

**{¶35}** Sufficiency of the evidence and manifest weight of the evidence are separate and distinct legal standards. *State v. Thompkins*, 78 Ohio St.3d 380. Essentially, sufficiency is a test of adequacy. *Id.* A sufficiency of the evidence standard requires the appellate court to examine the evidence admitted at trial, in the light most favorable to the prosecution, to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259.

**{¶36}** In contrast to sufficiency of the evidence analysis, when reviewing a weight of the evidence argument, the appellate court reviews the entire record, weighing the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts of evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387.

**{¶37}** Under a weight of the evidence argument, the appellate court will consider the same evidence as when analyzing Appellant's sufficiency of evidence argument. Appellant argues she was convicted on insufficient evidence, and that the jury clearly lost

its way as their conviction of Appellant based on the total weight of the evidence was a manifest miscarriage of justice.

{¶38} R.C. §2917.21(A), in pertinent part, states:

No person shall knowingly make or cause to be made a telecommunication, or knowingly permit a telecommunication to be made from a telecommunications device under the person's control, to another, if the caller does any of the following:

(A)(1) Makes the telecommunication with purpose to harass, intimidate, or abuse any person at the premises to which the telecommunication is made, whether or not actual communication takes place between the caller and a recipient;

* * *

(5) Knowingly makes the telecommunication to the recipient of the telecommunication, to another person at the premises to which the telecommunication is made, or to those premises, and the recipient or another person at those premises previously has told the caller not to make a telecommunication to those premises or to any person at those premises; [or]

(6) Knowingly makes any comment, request, suggestion, or proposal to the recipient of the telecommunication that is threatening, intimidating, menacing, coercive, or obscene with the intent to abuse, threaten, or harass the recipient[.]

* * *

(B)(2) No person shall knowingly post a text or audio statement or an image on an internet web site or web page for the purpose of abusing, threatening, or harassing another person.

**{¶39}** Appellant argues Appellee failed to meet its burden as they did not prove Appellant intended to harass, abuse, or threaten the victim. However, Appellee is not required to present direct evidence of a defendant's intention or purpose to abuse, harass, or threaten. *State v. Lucas*, 7th Dist. Belmont No. 05 BE 10, 2005-Ohio-6786, ¶15.

**{¶40}** The evidence shows Appellant attempting to harass the victim through text messages, tweets, and Facebook posts alleging conspiracy theories, suggesting victim will hang for treason along with pictures of victim hanging for treason, shared details of the victim's personal life. Appellant then started sending messages to the victim's husband saying she could not wait to see the victim in prison, calling her abusive names, and to pass this along to her.

**{¶41}** Additionally, under R.C. 2917.21(A)(5), intent to harass, abuse, or threaten is not an element of the crime. "[T]he State must establish the defendant made a telecommunication to the recipient and the recipient previously told the defendant not to make a telecommunication to the recipient." *City of Delaware v. Boggs*, 5th Dist. Delaware No. 18 CAC 030027, 2018-Ohio-4677, ¶14.

**{¶42}** In the case *sub judice*, the victim testified that Appellant began contacting her in 2019. They were initially ignored, but then began at such a frequency the victim responded to Appellant to tell Appellant to stop contacting the victim. Appellant stopped messaging for a couple months, but eventually started texting the victim again.

{¶43} Therefore, we find Appellee presented sufficient evidence, if believed by a jury, that Appellant sent telecommunications to the victim after the victim instructed her not to, and that Appellant sent text messages, tweets, and Facebook posts intending to harass, abuse, or threaten the victim. Our review of the entire record fails to persuade us that the jury lost its way and created a manifest miscarriage of justice. Appellant was not convicted against the manifest weight of the evidence.

{¶44} Appellant's First and Second Assignments of Error are overruled.

### III.

{¶45} In Appellant's Third Assignment of Error, Appellant argues she was deprived of effective assistance of counsel as her trial counsel failed to provide her with incriminating evidence before she declined Appellee's plea offer and by failing to dismiss for lack of speedy trial. We disagree.

### a. Standard of Review

{¶46} Our standard is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. *Id.* First, we must determine whether counsel's assistance was ineffective; whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. *Id.* If we find ineffective assistance of counsel, we must then determine whether the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. *Id.* This requires a showing

there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.*

**{¶47}** Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675, 693 N.E.2d 267 (1998). Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

### b. Disclosure of Evidence to be Presented

**{¶48}** Appellant addressed the trial court on the record and indicated she had not been made aware of text messages which would be introduced as evidence. Appellant argues this omission caused her to proceed with trial and not accept Appellee's plea offer. However, it is Appellant's burden to present evidence which meets a minimum level of cogency to support his or her claims. *State v. King*, 5th Dist. Stark No. 2021CA00140, 2022-Ohio-676, ¶33. A self-serving statement generally does not meet this required minimum level of cogency. *Id.* At ¶26. In addition, the trial court was in the position to judge the credibility of the statement Appellant made. The trial court treated the statement as a Motion for Mistrial and overruled the motion. Without any other supporting evidence, we find Appellant has failed to support her allegation with evidentiary quality materials supporting her contention that trial counsel's performance fell below an objective standard of reasonable representation, or that any prejudice arose from this alleged ineffectiveness.

### c. Motion to Dismiss for Lack of Speedy Trial

{¶49}  Next, Appellant argued trial counsel was ineffective for failing to file a motion to dismiss for lack of speedy trial. Appellant did not file a Motion to Dismiss for Lack of Speedy Trial.

{¶50} "A defendant cannot raise a speedy trial argument for the first time on appeal." *State v. Salser*, 5th Dist. Richland No. 2019 CA 0087, 2020-Ohio-1000, ¶25, citing *City of Worthington v. Ogilby*, 8 Ohio App.3d 25, 455 N.E.2d 1022 (10th Dist.1982) paragraph 2 of the syllabus as quoted in *State v. Vance*, 5th Dist. Richland No. 2003CA0030, 2004-Ohio-258, ¶45. Based on the face of the record, it appears the case was over time. However, the record was not properly developed on this issue.  Appellee did not have the opportunity or necessity to demonstrate whether any time was tolled under the statute. The proper mechanism to develop the record is a post-conviction relief petition alleging ineffective assistance of counsel for failing to file a motion to dismiss for lack of speedy trial. *Salser* at ¶25. This gives Appellant and Appellee the opportunity to present evidence and testimony to establish whether or not any time was tolled. *Id.*

{¶51} "Without an evidentiary hearing before the trial court to develop the record on this issue, this Court is unable to review the issue and as such, as noted above, it is more appropriate for post-conviction relief. *Id.* at ¶26.

**{¶52}** Therefore, Appellant's Third Assignment of Error is overruled.

**{¶53}** For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is hereby affirmed.

By: Wise, J.

Baldwin, J., concurs.

Hoffman, P. J., concurs in part and dissents in part.

JWW/br 0324

*Hoffman, P.J., concurring in part, and dissenting in part*

{¶54}    I concur in the majority's analysis and disposition of Appellant's first and second assignments of error.  I further concur in the majority's analysis and disposition of Appellant's third assignment of error as it pertains to her argument defense counsel was ineffective in failing to provide her with incriminating evidence before she declined Appellee's plea offer.

{¶55}  However, I respectfully dissent from the majority's decision not to address on the merits Appellant's claim of ineffective assistance of counsel for failing to file a motion to dismiss for speedy trial.

{¶56}  I begin by conceding I authored one of the two cases cited by the majority, *State v. Vance*, 5th Dist. Richland No. 2003 CA 0030, 2004-Ohio-258, wherein this Court held, even where it appears on the face of the record the case was over time, the proper mechanism to develop the record regarding possible tolling under the speedy trial statute is via a post-conviction relief petition.  I cited, as does the majority herein, *City of Worthington v. Ogilby* (1982), 8 Ohio App.3d 25, in support of my decision.  Closer review of the *Ogilby* decision reveals a claim of ineffective assistance of counsel was not raised therein.  The *Ogilby* Court summarily denied the speedy trial claim based upon the fact it could not be raised for the first time on appeal.  It did not suggest a possible further mechanism to review the claim.

{¶57}  My opinion in *Vance* was cited and followed by this Court in *State v. Turner*, (2006), 168 Ohio App.3d 176, and more recently in *State v. Salser*, 5th Dist. Richland Cty. App. No. 2019 CA 0087, 2020-Ohio-1000.  While recognizing I wrote the *Vance* opinion

which was the lead case this District has since followed, upon reconsideration, I think I was wrong.

**{¶58}** Whether the speedy trial statute has been violated, and more specifically whether any days within the time period were properly tolled, can and should be decided upon the record as presently submitted to this court. That record cannot be altered or supplemented after appeal. Both Appellant and Appellee have had the opportunity to argue and establish whether any time was tolled in their respective briefs before this Court based upon the docket and record presented to this Court. As such, I respectfully dissent from the majority's decision not to address the merits of Appellant's third assignment of error at this time.